UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

CIBC BANK USA,

*Plaintiff*

v.

No. SA-18-CV-00462-JKP

ISI SECURITY GROUP, INC.,
DETENTION CONTRACTING GROUP,
LTD.,  ISI DETENTION CONTRACTING
GROUP, INC., A TEXAS
CORPORATION..;  ISI DETENTION
CONTRACTING GROUP, INC., A
CALIFORNIA CORPORATION;  ISI
DETENTION CONTRACTING GROUP,
INC., A NEW MEXICO
CORPORATION;  ISI DETENTION
SYSTEMS, INC.,  ISI SYSTEMS, LTD.,
METROPLEX CONTROL SYSTEMS,
INC.,  ISI CONTROLS, LTD.,
METROPLEX COMMERCIAL FIRE
AND SECURITY ALARMS, INC.,
MCFSA, LTD.,  COM-TEC SECURITY,
LLC,  COM-TEC CALIFORNIA
LIMITED PARTNERSHIP,  ARGYLE
SECURITY, INC., DARWIN KATAN,

*Defendants*

ORDER ON MOTION TO COMPEL ARBITRATION

Before the Court is Receiver Scott Eisenberg's Motion to Compel Arbitration (Dkt. No.

82) and responses in opposition filed by Cornerstone Detention Products, Inc. and Budget

Electrical Contractor, Inc. (Dkt. Nos. 85,86). Upon consideration of the motion and responses

and arguments of the parties, the Court concludes Receiver's Motion to Compel Arbitration is

DENIED. Further, to the extent Receiver Scott Eisenberg requests this Court stay the named

subcontractors' claims against Westchester Fire Insurance Company and Travelers Casualty and Surety Company in a California state court, this request is DENIED.

## Background

On May 15, 2018, CIBC Bank USA filed this action against ISI Security Group and its related entities (collectively, the "ISI Defendants") seeking appointment of a receiver over the assets and affairs of the ISI Defendants. (Dkt. No. 1). This Court entered the parties' Agreed Order Appointing Receiver Scott Eisenberg (Receiver). (Dkt. No. 5). In the Agreed Order, this Court stayed all litigation against the ISI Defendants. Specifically, paragraph 27 of the Agreed Order states:

> All litigation and/or proceedings naming [ISI] Defendants as a party shall be stayed, as against the [ISI] Defendants, until further order of this Court. No person may initiate, maintain, or in any way prosecute, in any court or other tribunal, any proceeding, suit, or action against [ISI] Defendants without further order of this Court.

(Dkt. No. 5 at ¶ 27).

### Related Action: Eisenberg v. Clark Construction Group, Case No. 5:18-cv-01314-JKP

On December 17, 2018, Receiver, in the administration of his duties, filed a complaint against Clark Construction Group ("Clark") in the United States District Court for the Western District of Texas in the action styled, *Eisenberg v. Clark Construction Group – California L.P.*, Case No. 5:18-cv-01314-JKP ("1314 action").

In the 1314 action, Receiver, on behalf of ISI Security Group entities, asserted claims against Clark arising out of the construction of a correctional facility in Indio, California (the "Project"). (Dkt No. 2; 1314 action). It is undisputed Clark was the general contractor on the Project, and in this capacity entered a subcontract with ISI Security Group, Inc. ("ISI") on May

28, 2015, ("Clark/ISI Contract").   (*Id*. ¶ 15,19). Under the Clark/ISI Contract, ISI was to commence its portion of work on the Project in May 2016; however, due to construction delays, ISI could not begin its work until May 2017. (*Id*. ¶¶ 22-26). As a result of the delays, and other issues relating to the Clark/ISI Contract, Receiver alleges Clark owes ISI over $10 million.

Clark filed a motion to dismiss the 1314 action, arguing the Clark/ISI Contract mandates the claims asserted against Clark be adjudicated in binding arbitration in California. Thereafter, Clark and ISI agreed to binding arbitration to resolve the claims asserted in the 1314 action, and this Court entered an order on these parties' Stipulation to Arbitrate on March 10, 2020. (Dkt. No. 22,23; 1314 action). The 1314 action is administratively closed pending arbitration.

## Budget Electrical Contracts, Inc. and Cornerstone Detention Product's Assertion of Claims

### BEC

On May 22, 2019, Budget Electrical Contracts, Inc. ("BEC") filed a complaint against ISI, Westchester Fire Insurance Company ("Westchester") and Travelers Casualty and Surety Company ("Travelers") in the Superior Court of the State of California (the "California action").

In the California action, BEC alleges ISI entered a subcontract with BEC on January 18, 2016, under which BEC agreed to provide certain electrical work on the Project ("ISI/BEC Subcontract"). In connection with the Project, Westchester issued a bond guaranteeing the payment of ISI's obligations, and Travelers issued a bond guaranteeing the payment of Clark's obligations.

BEC contends ISI breached the ISI/BEC Subcontract. Due to the construction delays and subsequent requirements to expedite completion, BEC alleges it "incurred and continues to incur, costs and expenses as a result of delays, inefficiencies, inaccurate project drawing, and demobilization and remobilization in an additional amount of $2,417,569.29," for which it has

not been paid. BEC has been paid the initial amount owed under the ISI/BEC Subcontract, and only seeks damages for this alleged additional amount owed.

BEC admits this Court's Agreed Order precludes any action against the ISI Defendants to recover amounts it alleges are owed under the ISI/BEC Subcontract. BEC represents to this Court in its response to the motion and in the hearing held on this motion on May 13, 2020, that BEC requested its claims against ISI in the California action be dismissed[1], and BEC has no intent to pursue any claim against any ISI Defendant. Instead, BEC intends to recover only on its claim under the surety bonds issued by Westchester and Travelers.

### Cornerstone

At the hearing held on May 13, 2020, Subcontractor Cornerstone represented to this Court it asserts no active claims against any ISI Defendant involving the Project and seeks only to recover $1,714,499.17 in acceleration and extension claims under the surety bonds issued by Westchester and Travelers.

### MOTION TO COMPEL ARBITRATION

Following this Court's Order on Clark and Receiver's Stipulation to Arbitration in the 1314 action, Receiver privately sought BEC's voluntary participation in arbitration to recover on its claims against ISI. Receiver also requested BEC voluntarily stay its California action against Westchester and Travelers pending arbitration of ISI's claims against Clark and any underlying claims BEC might assert against ISI. BEC declined to participate in arbitration to pursue claims against ISI and declined to stay its California action against Westchester and Travelers.

---

[1] BEC represents, "under California Code of Civil Procedure Section 581(c), a plaintiff has a right to dismiss a complaint as to any defendant, with or without prejudice, at any time before commencement of trial. Thus, the requested dismissal does not require an order." *BEC Response to Motion to Compel Arbitration*, Dkt. No.8, p. 8, fn. 1.

Receiver then filed in this action the pending Motion to Compel Arbitration. In this motion, Receiver requests this Court compel BEC and Cornerstone to adjudicate all claims against any ISI Defendant in the ISI/Clark arbitration. Receiver also seeks to stay BEC's California action in which it asserts claims against Westchester and Travelers to recover under the surety bonds.

In this Motion to Compel Arbitration, Receiver also asserts another subcontractor, Prime Coat, "raised claims against ISI involving the Project. . . . Prime Coat recently consented to joinder of its claims to the ISI/Clark Arbitration." Still, in its Motion to Compel Arbitration, Receiver seeks to compel Prime Coat's participation and assertion of its claims against ISI to the ISI/Clark arbitration and seeks to stay Prime Coat's claims against Westchester and Travelers.[2]

**Argument**

In this Motion to Compel Arbitration, Receiver argues compelling arbitration of the Subcontractors' claims against ISI serves judicial economy because any claims arising out of the Project are related to and are grounded in the same facts as those addressed in arbitration, and any liability of Westchester and Travelers is contingent on the viability of the Subcontractors' claims asserted against ISI. Therefore, to avoid inconsistent verdicts pertaining to the amount of additional damages, the Subcontractors must first establish their claims in arbitration, meaning the arbitrator must adjudicate any claims asserted against ISI and any damages and additional damages owed before the Subcontractors may pursue their claims against Westchester and Travelers. Receiver argues the ISI Subcontract contains an assumption clause that incorporates the arbitration clause contained in the ISI/Clark Contract, and thereby, the Subcontractors are required to arbitrate any claims against ISI.

---

[2] BEC, Cornerstone and Prime Coat will hereinafter be referred to collectively as "the Subcontractors".

**Legal Standard**

Determination of a motion to compel is a two-step inquiry. *JP Morgan Chase & Co. v. Conegie*, 492 F.3d 596, 598 (5th Cir. 2007). At the first step, the court must determine whether the parties agreed to arbitrate the subject dispute. *Id.* In determining this question, there are two considerations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.*; *United States for Use & Benefit of F&W Elec. Contractors, Inc. v. Terra Constr., Inc.*, 17-CV-444-OLG, 2017 WL 10841489, at *1 (W.D. Tex. Aug. 14, 2017). At the second step of the two-step inquiry, should the court find the parties agreed to arbitrate, it must determine whether any federal statute or policy renders the asserted claims or dispute in question non-arbitrable. *JP Morgan Chase & Co.*, 492 F.3d at 598.

At the first step, this Court must determine whether the Subcontractors agreed to arbitrate any claims against the ISI Defendants arising out of the Project. *See JP Morgan Chase & Co.*, 492 F.3d at 598. Here, Receiver's arguments pertain to this first consideration: whether there is a valid agreement to arbitrate between the ISI Defendants and the Subcontractors. Receiver asserts an agreement need not expressly provide for arbitration but may do so in a secondary document which is incorporated, or assumed, by reference. Receiver argues the Subcontractors agreed to arbitrate any claims arising out of the Project through an assumption clause in the ISI Subcontract that incorporated the Clark/ISI contract documents. By incorporating the Clark/ISI contract documents, the Subcontractors thereby assumed the arbitration clause contained therein.

This Court need not determine the validity of Receiver's arguments regarding the existence of an agreement to arbitrate. Assuming, without deciding, these parties entered a valid arbitration agreement, the Court resolves Receiver's Motion to Compel by considering the second factor of the

first step of its analysis: whether the dispute in question falls within the scope of any arbitration agreement.

The Subcontractors assert no claims against the ISI Defendants in this Court. Further, the Subcontractors assert no claims against the ISI Defendants in the California action. The Subcontractors represent to this Court they do not intend to assert any claims against the ISI Defendants in California or in this action and intend to pursue recovery under the surety bonds, only, in the California action. Therefore, there is no active dispute between the ISI Defendants and the Subcontractors for this Court to ascertain whether it falls within the scope of any arbitration agreement.

This Court cannot compel the Subcontractors to arbitrate claims or disputes that do not exist. While this Court might suppose any claim asserted by the Subcontractors would necessarily arise out of the Project, which is the subject of the Clark/ISI arbitration, still, there are no live claims to compel to arbitration. Any determination that any claims asserted that arise out of the Project would necessarily fall within the scope of the arbitration would be based upon conjecture, and the sole fact that any claim would arise out of the Project is not sufficient to compel a resistant party to arbitration. This Court cannot compel arbitration based upon inference or speculation. Because the Subcontractors assert no live claims against the ISI Defendants, this Court cannot determine whether any live claim or dispute falls within any arbitration agreement.

For this reason, Receiver's Motion to Compel Arbitration is DENIED.

## REQUEST TO STAY CALIFORNIA ACTION

Receiver requests this Court stay the California state-court action in which the Subcontractors pursue claims against Westchester and Travelers until resolution of the pending arbitration between ISI and Clark. Receiver asserts the Subcontractors' claims in the California action for recovery under the surety bonds are inextricably intertwined with the claims being resolved in arbitration. Receiver argues the arbitration will determine Clark's liability to ISI, which necessarily includes the amount ISI owes, if any, to the Subcontractors. Therefore, the amount the Subcontractors may recover under the surety bonds is dependent on resolution of Clark's liability to ISI. Consequently, the ISI Defendants contend the Subcontractors must establish the viability and amount of their claims, and have these issues determined in arbitration before the Subcontractors can pursue recovery under the surety bonds in the California state court. Receiver argues concurrent proceedings over the same subject matter, i.e. the viability and amount of the Subcontractors' claims, will result in inconsistent rulings regarding ISI's liability, if any, to the Subcontractors under the ISI Subcontract, and thereby, Clark's liability to ISI.

A court may exercise its discretionary power to stay an action between non-arbitrating parties pending the outcome of arbitration as a means of controlling and managing its docket and to preserve the purpose of the arbitration. *See Complaint of Hornbeck Offshore (1984) Corp.,* 981 F.2d 752, 755 (5th Cir. 1993); *U.S. ex rel. John Jamar Const. Services v. Travelers Cas. & Sur. Co. of Am.*, CIV.A. H-14-3363, 2015 WL 757858, at *1 (S.D. Tex. Feb. 23, 2015). In cases similar to this one, courts exercised this discretion when a subcontractor pursued an action against the general contractor and a surety in the same suit, and the general contractor exercised an arbitration clause compelling the subcontractor to arbitration. *See, e.g. U.S. ex rel. Tindall Corp. v. Satterfield &*

*Pontikes Const., Inc.*, No. SA–14–cv–33–XR, 2014 WL 819478, at *3 (W.D.Tex. March 3, 2014)

(stayed claim against sureties pending arbitration of claim against contractor asserted in same

action "to promote judicial economy and avoid the risk of conflicting judgments between this court

and the arbitrator"); *John Jamar Const. Services*, 2015 WL 757858 at *2 (surety moved to stay

litigation pending arbitration following caselaw allowing nonsignatory to invoke stay); *Terra*

*Constr., Inc.*, 2017 WL 10841489, at *1 (same facts and reasoning as *Tindall* and *Jamar Constr.*).

In these cases in which the subcontractor asserted simultaneous claims against the contractor and

against a surety, the courts reasoned judicial economy would be served by staying the litigation

against the surety while active claims against the contractor were resolved through arbitration. *See*

*Jamar Constr.*, 2017 WL 10841489, at *2; *Terra Constr., Inc.*, 2017 WL 10841489, at *1-*2;

*Tindall*, 2014 WL 819478, at *3.

Here, the facts and procedural posture are distinguishable from this authority and examples

of when a court exercised this discretion. Here, this factual scenario involves the same parties as in

the cited authority, i.e., a primary subcontractor (ISI), subcontractors (BEC and Cornerstone) and a

surety (Westchester and Travelers). However, the Subcontractors do not pursue active claims

against the ISI Defendants in this action, nor do they pursue their claims against Westchester and

Travelers in this action. Instead, the Subcontractors chose to pursue only a claim on the surety

bonds against Westchester and Travelers in a California state court. Thereby, the California action

involves claims asserted by the Subcontractors against Westchester and Travelers; the arbitration

involves claims asserted by the ISI Defendants against the general contractor, Clark.

Because the Subcontractors do not pursue claims against the ISI Defendants simultaneous

with claims against Westchester and Travelers in the same action, staying the California action will

not serve as a means of controlling and managing this Court's docket. Thus, the reasoning in those cases is not directly applicable here and does not persuade this Court to exercise a discretionary stay of the outlying California state action.

Next, this Court considers whether a stay would serve the purpose of arbitration. Receiver represents the ISI Subcontractors' claims against Westchester and Travelers are contingent on the arbitrator's determination of the viability of the Subcontractors claims and any damages the Subcontractors are owed under the ISI Subcontract. However, under these facts and procedural posture, this Court concludes California law and policy unseat any discretionary power to protect the purpose and priority of arbitration.

In California, the liability of a surety on a public works payment bond is not affected by the terms or validity of the underlying contracts between the contractors nor by whether any contractor breached an underlying contract. *Pneucrete Corp. v. United States Fidelity & Guaranty Co.*, 7 Cal. App. 2d 733, 737-738, 740 (1935). The subcontractor may recover against the surety regardless of whether the contractor could recover under the contract. *Id.*; *see also Crosno Constr., Inc. v. Travelers Casualty and Surety Co.*, 2020 WL 1899278, at *5-*9. Moreover, since the action on such a bond is not based on the liability of the contractor, but on the obligation of the bond, which provides a separate and distinct statutory remedy, the obligation of the bond is enforceable without reference to a contract between the contractors. *Pneucrete Corp.*, 7 Cal. App. 2d at 738, 740; *see also Crosno*, 2020 WL 1899278, at *13-*14.

The purpose of a payment bond on a California public works project is to provide "a quick, reliable and sufficient means of payment." *Crosno*, 2020 WL 1899278, at *8 (*quoting Cooley v. Freeman*, 204 Cal. 59, 62 (1928)).  "The requirement of a bond . . . is a matter of public concern

and any attempt to limit, nullify or render ineffectual the bond or any of its terms would be against public policy." *Pneucrete Corp.*, 7 Cal. App. 2d at 738, 740 (1935); *see also Crosno*, 2020 WL 1899278, at \*8-\*9.

Because an action on a surety bond is not based on the liability of the contractor, but on the obligation of the bond, and in the interest of following public policy protecting the purpose of payment bond, under these facts, this Court declines to exercise discretionary authority to stay the California action.

## CONCLUSION

For the reasons stated, Receiver's Motion to Compel Arbitration is DENIED. Receiver's request that this Court stay the named subcontractors' claims against Westchester Fire Insurance Company and Travelers Casualty and Surety Company in the California state court is DENIED.

IT IS SO ORDERED.
SIGNED this 21st day of May, 2020.

JASON PULLIAM
UNITED STATES DISTRICT JUDGE